IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

FILED - CLERK
U.S. DISTRICT COURT

1999 APR -7 PM 3: 33

TX EASTERN - LUFKIN

BY ___9:99CV___ 77

| | | |
|---|---|---|
| 1. | DEAN KINNEY<br>and | § |
| 2. | DAVID HALL | § |
| | Plaintiff | § |
| v. | | § |
| 1. | BOBBY WEAVER, Gregg<br>County Sheriff<br>and | § |
| 2. | W. A. "BILL" YOUNG, Tyler<br>Police Chief<br>and | § |
| 3. | RONNIE MOORE, Kilgore<br>Director of Public Safety<br>and | § |
| 4. | CHARLES "CHUCK" WILLIAMS,<br>City of Marshall Police<br>Chief<br>and | § |
| 5. | J. B. SMITH, Smith County<br>Sheriff<br>and | § |
| 6. | BOB GREEN, Harrison County<br>Sheriff<br>and | § |
| 7. | TED GIBSON, Nacogdoches<br>Police Chief<br>and | § |
| 8. | PAUL JACK ELLETI, Panola<br>County Sheriff<br>and | § |
| 9. | GREGG COUNTY, TEXAS<br>and | § |
| 10. | CITY OF TYLER, TEXAS<br>and | § |
| 11. | CITY OF KILGORE, TEXAS<br>and | § |
| 12. | CITY OF MARSHALL, TEXAS<br>and | § |
| 13. | SMITH COUNTY, TEXAS<br>and | § |

CIVIL ACTION NO.

JUDGE:

JUDGE COBB

JURY DEMANDED

**COMPLAINT**

1

| | |
|---|---|
| 14. HARRISON COUNTY, TEXAS | § |
| and | § |
| 15. CITY OF NACOGDOCHES, | § |
| TEXAS | § |
| and | § |
| 16. PANOLA COUNTY, TEXAS | § |
| and | § |
| 17. EAST TEXAS POLICE CHIEF'S | § |
| ASSOCIATION | § |
| | § |
| Defendants | § |

## COMPLAINT

Come now Plaintiffs Dean Kinney and David Hall who state as follows:

I

### Preliminary Statement

1. Plaintiffs Dean Kinney and David Hall, who were blackballed in retaliation for their truthful testimony in behalf of the victim of a police shooting, commence this action pursuant to 42 U.S.C. §1983 which provides in relevant part for redress for every person within the jurisdiction of the United States for the deprivation, under color of state law, of any rights, privileges, or immunities secured by the Constitution and laws.

2. Specifically, defendants' wrongful acts and omissions violate rights guaranteed to Plaintiffs Kinney and Hall by the First and Fourteenth Amendments to the United States Constitution.

3. This action is also commenced pursuant to 42 U.S.C. §1985(2) which prohibits in relevant part two or more persons in any State from conspiring to deter by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, from testifying to any matter pending therein freely,

2

fully, and truthfully or to injure such party or witness in his person or property on account of his having so testified.

4.    Plaintiffs Kinney and Hall also assert a state law claim based on tortious interference with a business relationship.

5.    Plaintiffs Kinney and Hall seek compensatory damages, punitive damages, declaratory relief as authorized by 28 U.S.C. §2201 and statutory attorneys' fees as authorized by 42 U.S.C. §1988.

## II

### Jurisdiction

6.    Jurisdiction over Plaintiffs Kinney and Hall's constitutional claims for which redress is provided by 42 U.S.C. §1983 is conferred on this Court by 28 U.S.C. §1343(a)(3).    Jurisdiction over Plaintiffs Kinney and Hall's 42 U.S.C. §1985(2) claims is conferred on this Court by 28 U.S.C. §1343(1).    Federal question jurisdiction is also conferred on this Court by  28 U.S.C. §1331 because this action arises under the Constitution and laws of the United States.

7.    Plaintiffs Kinney and Hall assert their state law claims under this Court's pendent jurisdiction as expanded by 28 U.S.C. §1367.

## III

### Parties

#### Plaintiffs

8.    Plaintiff Dean Kinney is and was at all times relevant hereto a citizen of the United States and a resident of Rusk County, Texas.

3

9.  Plaintiff David Hall is and was at all times relevant hereto a citizen of the United States and a resident of Rusk County, Texas. Plaintiff Hall also maintains a residence in Collin County, Texas where he is presently employed.

<u>Defendants</u>

10.  Defendant Sheriff Bobby Weaver is and was at all times relevant hereto a resident of Gregg County, Texas.  Defendant Sheriff Weaver is and was at all times relevant hereto the Sheriff and chief law enforcement official of Defendant Gregg County.  It is Defendant Sheriff Weaver's responsibility and duty to select and approve training for all deputies.  It is also Defendant Sheriff Weaver's responsibility and duty not to blackball or otherwise retaliate against police instructors who testify truthfully as expert witnesses in behalf of police misconduct victims.

11.  Defendant Police Chief W. A. "Bill" Young is and was at all times relevant hereto a resident of Smith County, Texas. Defendant Police Chief Young is and was at all times relevant hereto Defendant City of Tyler's Police Chief and chief law enforcement officer.  It is Defendant Police Chief Young's responsibility and duty to select and approve training for all police officers.  It is also Defendant Police Chief Young's responsibility and duty not to blackball or otherwise retaliate against police instructors who testify truthfully as expert witnesses in behalf of police misconduct victims.

4

12.   Defendant Director of Public Safety Ronnie Moore is and was at all times relevant hereto a resident of Rusk County, Texas. Defendant Director of Public Safety Moore is and was at all times relevant hereto the Director of Public Safety of Defendant City of Kilgore. It is Defendant Director of Public Safety Moore's responsibility and duty to select and approve training for all public safety officers.  It is also Defendant Director of Public Safety Moore's responsibility and duty to promulgate and implement policies and procedures to provide that citizens who testify truthfully as expert witnesses in police misconduct cases are not blackballed or otherwise retaliated against.

13.   Defendant Police Chief Charles "Chuck" Williams  is and was at all times relevant hereto a resident of Gregg County, Texas. Defendant Police Chief Williams is and was at all times relevant hereto Defendant City of Marshall's Police Chief and chief law enforcement officer.   It is Defendant Police Chief Williams' responsibility and duty to select and approve training for all police officers.  It is also Defendant Police Chief Williams' responsibility and duty not to blackball or otherwise retaliate against police instructors who testify truthfully as expert witnesses in behalf of police misconduct victims.

14.   Defendant Sheriff J. B. Smith is and was at all times relevant hereto a resident of Smith County, Texas.  Defendant Sheriff Smith is and was at all times relevant hereto the Sheriff and chief law enforcement official of Defendant Smith County.   It is Defendant Sheriff Smith's responsibility and duty to select and approve

5

training for all deputies. It is also Defendant Sheriff Smith's responsibility and duty not to blackball or otherwise retaliate against police instructors who testify truthfully as expert witnesses in behalf of police misconduct victims.

15. Defendant Sheriff Bob Green is and was at all times relevant hereto a resident of Harrison County, Texas. Defendant Sheriff Green is and was at all times relevant hereto the Sheriff and chief law enforcement official of Defendant Harrison County. It is Defendant Sheriff Green's responsibility and duty to select and approve training for all deputies. It is also Defendant Sheriff Green's responsibility and duty not to blackball or otherwise retaliate against police instructors who testify truthfully as expert witnesses in behalf of police misconduct victims.

16. Defendant Police Chief Ted Gibson is and was at all times relevant hereto a resident of Nacogdoches County, Texas. Defendant Police Chief Gibson is and was at all times relevant hereto Defendant City of Nacogdoches' Police Chief and chief law enforcement officer. It is Defendant Police Chief Gibson's responsibility and duty to select and approve training for all police officers. It is also Defendant Police Chief Gibson's responsibility and duty not to blackball or otherwise retaliate against police instructors who testify truthfully as expert witnesses in behalf of police misconduct victims.

17. Defendant Sheriff Paul Jack Ellett is and was at all times relevant hereto a resident of Panola County, Texas. Defendant Sheriff Ellett is and was at all times relevant hereto the Sheriff

and chief law enforcement official of Defendant Panola County. It is Defendant Sheriff Ellett's responsibility and duty to select and approve training for all deputies. It is also Defendant Sheriff Ellett's responsibility and duty not to blackball or otherwise retaliate against police instructors who testify truthfully as expert witnesses in behalf of police misconduct victims.

18. Defendant Gregg County, Texas is located within the boundaries of the Eastern District of Texas. It is Defendant Gregg County's responsibility and duty not to blackball or otherwise retaliate against police instructors who testify truthfully as expert witnesses in behalf of police misconduct victims. It is also the responsibility and duty of Defendant Gregg County to select, approve and provide training for Defendant Gregg County's deputies.

19. Defendant City of Tyler, Texas is a municipality located within the boundaries of the Eastern District of Texas. It is Defendant City of Tyler's responsibility and duty not to blackball or otherwise retaliate against police instructors who testify truthfully as expert witnesses in behalf of police misconduct victims. It is also the responsibility and duty of Defendant City of Tyler to select, approve and provide training for Defendant City of Tyler's law enforcement officers.

20. Defendant City of Kilgore, Texas is a municipality located within the boundaries of the Eastern District of Texas. It is Defendant City of Kilgore's responsibility and duty not to blackball or otherwise retaliate against police instructors who testify truthfully as expert witnesses in behalf of police

7

misconduct victims.  It is also the responsibility and duty of Defendant City of Kilgore to select, approve and provide training for Defendant City of Kilgore's law enforcement officers.

21.  Defendant City of Marshall, Texas is a municipality located within the boundaries of the Eastern District of Texas.  It is Defendant City of Marshall's responsibility and duty not to blackball or otherwise retaliate against police instructors who testify truthfully as expert witnesses in behalf of police misconduct victims.  It is also the responsibility and duty of Defendant City of Marshall to select, approve and provide training for Defendant City of Marshall's law enforcement officers.

22.  Defendant Smith County, Texas is located within the boundaries of the Eastern District of Texas.  It is Defendant Smith County's responsibility and duty not to blackball or otherwise retaliate against police instructors who testify truthfully as expert witnesses in behalf of police misconduct victims.  It is also the responsibility and duty of Defendant Smith County to select, approve and provide training for Defendant Smith County's deputies.

23.  Defendant Harrison County, Texas is located within the boundaries of the Eastern District of Texas.  It is Defendant Harrison County's responsibility and duty not to blackball or otherwise retaliate against police instructors who testify truthfully as expert witnesses in behalf of police misconduct victims.  It is also the responsibility and duty of Defendant Harrison County to select, approve and provide training for Defendant Harrison County's deputies.

8

24. Defendant City of Nacogdoches, Texas is a municipality located within the boundaries of the Eastern District of Texas. It is Defendant City of Nacogdoches' responsibility and duty not to blackball or otherwise retaliate against police instructors who testify truthfully as expert witnesses in behalf of police misconduct victims. It is also the responsibility and duty of Defendant City of Nacogdoches to select, approve and provide training for Defendant City of Nacogdoches' law enforcement officers.

25. Defendant Panola County, Texas is located within the boundaries of the Eastern District of Texas. It is Defendant Panola County's responsibility and duty not to blackball or otherwise retaliate against police instructors who testify truthfully as expert witnesses in behalf of police misconduct victims. It is also the responsibility and duty of Defendant Panola County to select, approve and provide training for Defendant Panola County's deputies.

26. Defendant East Texas Police Chief's Association is an organization whose membership is made up of East Texas law enforcement officers. It is Defendant East Texas Police Chief's Association's duty not to blackball law enforcement officers who testify truthfully in behalf of police misconduct victims and/or who otherwise speak out on matters of public concern.

IV

Facts

The Men

27. Plaintiffs Kinney and Hall are career law enforcement officers. Both men are proud of their chosen profession. Both men believe very strongly that it is their solemn duty to protect and defend the rest of us.

28. Plaintiffs Kinney and Hall believe that policemen are not above the law. Both men believe that policemen who violate the rights guaranteed to all of us by our Constitution should be held accountable.

29. Plaintiffs Kinney and Hall believe that municipalities should provide their officers with good training. Both men also believe that municipalities should be held accountable when their failure to provide good training causes harm to citizens.

30. Plaintiffs Kinney and Hall were successful instructors of police recruits at the East Texas Police Academy at Kilgore College for many years before the catastrophe set out below. Both men are proud of the many men and women it has been their privilege to teach. Both men are proud of the contribution their training of new recruits has made to our country.

31. Plaintiffs Kinney and Hall do not believe in the code of silence. Both men believe that police training and the use of force are important issues of public concern, and both men have spoken up truthfully regarding these issues.

10

## The Problem

32.  It is very hard for police misconduct victims to obtain justice.  One of the main reasons that it is hard for police misconduct victims to obtain justice is because the unwritten code of silence makes it very difficult for the victims to employ expert witnesses in meritorious cases.

33.  Policemen are reluctant to serve as expert witnesses in police misconduct cases because they do not want to testify against other policemen.  Victims of police misconduct will have an even harder time in the future retaining qualified expert witnesses if expert witnesses are not protected from blackballing and other retaliation.

## What Happened

34.  Plaintiffs Kinney and Hall were contacted in 1997 about a case, <u>Gonzales v. City Kerrville, Texas</u>, SA 96-CA-0998 (W.D. Tex., San Antonio Div. 1998), involving the death of a young man at the hands of a peace officer.  The shooting did not involve any policemen or agencies trained by either of the plaintiffs.  Both men determined, based on the facts of the case together with their experience, education, and training that the sniper's failure to apply his training and Defendant City of Kerrville's lack of a proper policy were proximate causes of the tragic shooting and that the sniper's use of deadly force amounted to excessive force.

35.  Plaintiffs Kinney and Hall agreed to testify truthfully at trial.

36. Plaintiffs Kinney and Hall truthfully testified as expert witnesses in August 1998. The jury returned a verdict in behalf of the family. However, the verdict was overturned by the trial court and the matter is presently on appeal.

37. Defendants East Texas Police Chief's Association, Sheriff Weaver, Chief Young, Director of Public Safety Moore, Chief Williams, Sheriff Smith, Sheriff Green, and Chief Gibson did not like the fact that Plaintiffs Kinney and Hall had testified truthfully in behalf of a police misconduct victim. These defendants conspired with each other and others to blackball and otherwise retaliate against Plaintiffs Kinney and Hall for their truthful testimony. Specifically, the aforementioned defendants tried to get Kilgore College to fire or reassign Plaintiffs Kinney and Hall because of their truthful testimony. These defendants also refused to send and/or threatened to refuse to send future recruits to the East Texas Police Academy.

38. Defendants East Texas Police Chief's Association, Sheriff Weaver, Chief Young, Director of Public Safety Moore, Chief Williams, Sheriff Smith, Sheriff Green, and Chief Gibson conspired to injure Plaintiffs Kinney and Hall and Plaintiffs Kinney and Hall's property on account of their having truthfully testified.

39. Defendants East Texas Police Chief's Association, Sheriff Weaver, Chief Young, Director of Public Safety Moore, Chief Williams, Sheriff Smith, Sheriff Green, and Chief Gibson wrongfully and tortiously interfered with Plaintiffs Kinney and Hall's business relationship with Kilgore College.

12

## Additional Facts Relating to Specific Defendants

40.  On September 30, 1998 Defendants Chief Williams, Chief Young, Director of Public Safety Moore, and Sheriff Green met together with the President of Kilgore College.  The aforementioned defendants' goal was to get Plaintiffs Kinney and Hall removed as instructors.  These defendants specifically threatened not to send future recruits and to withdraw present recruits from classes taught by Plaintiff Kinney and Hall.  They also threatened to quit sending recruits to the East Texas Police Academy unless Plaintiffs Kinney and Hall were removed or reassigned and, in fact, have refused to allow Plaintiffs Kinney and Hall to train their officers.

41.  Defendant East Texas Police Chief's Association held its regular meeting on October 22, 1998.  During the meeting Defendant Young falsely accused Plaintiffs Kinney and Hall of being unethical for testifying against police officers, and he urged other members present to boycott classes taught by Plaintiffs Kinney and Hall. Defendant Young further stated that he was not going to send any of his officers to any schools taught by Plaintiffs Kinney or Hall, and Defendants Chief Williams, Director of Public Safety Moore, Chief Gibson and Sheriff Weaver agreed not to send any of their officers to any schools taught by Plaintiffs Kinney or Hall.  It was then agreed among them that none of the chiefs or sheriffs present at the meeting would send their officers to any classes taught by either Kinney or Hall.

Additional Facts Concerning Defendant Sheriff Weaver

42.  Defendant Sheriff Weaver went on television on or about October 15, 1998 and blasted Plaintiffs Kinney and Hall.  Defendant Sheriff Weaver falsely accused Plaintiffs Kinney and Hall of breaching an unwritten code that one law enforcement officer does not testify against another law enforcement officer.

43.  Defendant Sheriff Weaver's reason for doing everything set out above was to (a) retaliate against Plaintiffs Kinney and Hall for their truthful testimony; (b) deliberately or recklessly misrepresent the true facts about Plaintiffs Kinney and Hall; (c) blackball Plaintiffs Kinney and Hall in the law enforcement community; and (d) facilitate a boycott of Plaintiffs Kinney and Hall's classes.

Additional Facts Concerning Defendant Chief Young

44.  On or about September 29, 1998 Defendant Chief Young sent a letter to the President of Kilgore College falsely accusing Plaintiffs Kinney and Hall of a major conflict of interest.  The letter included the veiled threat that "I trust you will resolve this conflict as soon as possible."

45.  On or about September 30, 1998 Defendant Chief Young met with the President of Kilgore College and insisted in relevant part that something be done about Plaintiffs Kinney and Hall.

46.  Defendant Chief Young went on television on or about October 15, 1998 and blasted Plaintiffs Kinney and Hall.  He reiterated Defendant City of Tyler's refusal to send individuals to be trained by Plaintiffs Kinney or Hall and stated in relevant part that the

damage caused by Plaintiffs Kinney and Hall would not be excused.

47. On or about October 16, 1998 Defendant Chief Young told the Tyler Morning Telegraph that he would no longer send officers to be trained by Plaintiffs Kinney and Hall because of their expert testimony.

48. By October 17, 1998 approximately a dozen cadets from the Tyler Police Department were withdrawn by Defendant Chief Young.

49. On or about October 19, 1998 Defendant Chief Young advised the Kilgore News Herald that he would withdraw his people from the police academy if Plaintiffs Kinney and Hall were not terminated or reassigned.

50. On or about January 8, 1999 Defendant Chief Young told the Tyler Morning Telegraph that he might send people back to the academy as long as they were not taught by Plaintiff Kinney. Tragically, Defendant Chief Young had been successful in running off Plaintiff Hall.

51. Defendants Chief Young and City of Tyler have not allowed their officers to be trained by Plaintiffs Kinney and Hall.

52. Defendant Chief Young's reason for doing everything set out above was to (a) retaliate against Plaintiffs Kinney and Hall for their truthful testimony; (b) falsely cast Plaintiff's Kinney and Hall in a bad light; (c) blackball Plaintiffs Kinney and Hall in the law enforcement community; and (d) facilitate a boycott of Plaintiffs Kinney and Hall's classes.

## Additional facts concerning Defendant Director of Public Safety Moore

53. Defendant Public Safety Director Moore is a principal architect of the evil conspiracy to retaliate against Plaintiffs Kinney and Hall for their truthful expert testimony in behalf of a police misconduct victim in the <u>Gonzalez</u> case. Defendant Public Safety Director Moore wrote a letter to the President of Kilgore College on September 15, 1998 that was replete with inaccurate facts and unwarranted personal and professional attacks against Plaintiffs Kinney and Hall. Defendant Public Safety Director Moore has also blasted Plaintiffs Kinney and Hall to Kilgore police officers and at the October 22, 1998 East Texas Police Chief's Association meeting referred to above.

54. Defendants Public Safety Director Moore and City of Kilgore have not allowed recruits to be trained by Plaintiffs Kinney and Hall.

55. Defendant Public Safety Director Moore's reason for doing everything set out above was to (a) retaliate against Plaintiffs Kinney and Hall for their truthful testimony; (b) deliberately or recklessly misrepresent the true facts about Plaintiffs Kinney and Hall; (c) blackball Plaintiffs Kinney and Hall in the law enforcement community; and (d) facilitate a boycott of Plaintiffs Kinney and Hall's classes.

## Additional Facts Concerning Defendant Sheriff Smith

56. On or about October 15, 1998 Defendant Sheriff Smith took to the airwaves and blasted Plaintiffs Kinney and Hall. Defendant Sheriff Smith stated on Region 56 that it was not good enough that

16

Plaintiffs Kinney and Hall would not testify against their students and departments for whom they train.

57. On or about October 15, 1998 Defendant Sheriff Smith went on Channel 7 and stated that Plaintiffs Kinney and Hall had "prostituted" themselves by testifying against another officer and in so doing had lost all of their credibility.

58. On or about October 16, 1998 Defendant Sheriff Smith falsely stated that Plaintiffs Kinney and Hall had "prostituted" themselves by testifying against another officer and that it was wrong for them to testify against another officer.

59. Defendants Sheriff Smith and Smith County have not allowed their officers to be trained by Plaintiffs Kinney and Hall.

60. On or about October 19, 1998 Defendant Sheriff Smith told the Kilgore News Journal that he was exploring other alternatives.

61. Defendant Sheriff Smith's reason for doing everything set out above was to (a) retaliate against Plaintiffs Kinney and Hall for their truthful testimony; (b) deliberately or recklessly misrepresent the true facts about Plaintiffs Kinney and Hall; (c) blackball Plaintiffs Kinney and Hall in the law enforcement community; and (d) facilitate a boycott of Plaintiffs Kinney and Hall's classes.

Additional Facts Concerning Defendant Sheriff Green

62. On or about September 30, 1998 Defendant Sheriff Green met with the President of Kilgore College and insisted in relevant part that something be done about Plaintiffs Kinney and Hall.

63. On or about October 15, 1998 Defendant Sheriff Green appeared on Region 56 News and falsely stated that Plaintiffs Kinney and Hall's actions were a threat to Defendant Sheriff Green's personnel and the people in training.

64. On or about October 16, 1998 Defendant Sheriff Green sent Kilgore College President a letter stating that he would no longer send students to be trained by Plaintiffs Kinney and Hall and falsely stating that persons trained by Plaintiffs Kinney and Hall would have to be retrained.

65. Defendant Sheriff Green made several additional threats to Plaintiff Hall.  Defendant Sheriff Green made it clear that Defendant Sheriff Green and others were going to try to get the politicians and others to withdraw funding from the Academy. Defendant Sheriff Green also made it clear that there was no hope for Plaintiff Kinney and that Plaintiff Hall should beg to keep his job.  Finally, Defendant Sheriff Green made it clear that he would rally others against Plaintiffs Kinney and Hall because of their truthful testimony.

66. Defendant Sheriff Green's reason for doing everything set out above was to (a) retaliate against Plaintiffs Kinney and Hall for their truthful testimony; (b) deliberately or recklessly misrepresent the true facts about Plaintiffs Kinney and Hall; (c) blackball Plaintiffs Kinney and Hall in the law enforcement community; and (d) facilitate a boycott of Plaintiffs Kinney and Hall's classes.

## Additional Facts Concerning Defendant Police Chief Williams

67.   Defendant Chief Williams wrote a letter to the President of Kilgore College on September 29, 1998 blasting Plaintiffs Kinney and Hall and making it clear the he would no longer allow his officers to be trained by them.

68.   Defendant Chief Williams copied his vile letter to Jim Dozier who is Director of the Texas Commission on Law Enforcement Officer Standards and Education, commonly referred to as TCLEOSE, in a transparent effort to enlist Director Dozier's support in Chief Williams' nefarious effort to blackball Plaintiffs Kinney and Hall.

69.   Defendants Chief Williams and City of Marshall had made a special request for training in the ASP Tactical Baton that was to be held on November 21, 1998.  However, in October 1998 Defendants Chief Williams and City of Marshall cancelled their officers from the course and Defendant City of Marshall's police officers have not been allowed to attend any training conducted by Plaintiff Kinney.

70.   Defendant Chief Williams' reason for doing everything set out above was to (a) retaliate against Plaintiffs Kinney and Hall for their truthful testimony; (b) deliberately or recklessly misrepresent the true facts about Plaintiffs Kinney and Hall; (c) blackball Plaintiffs Kinney and Hall in the law enforcement community; and (d) facilitate a boycott of Plaintiffs Kinney and Hall's classes.

## Additional Facts Concerning Chief Gibson

71.  Defendants Chief Gibson and City of Nacogdoches have not allowed their officers to be trained by Plaintiffs Kinney and Hall

72.  Defendant Chief Gibson's reason for doing everything set out above was to (a) retaliate against Plaintiffs Kinney and Hall for their truthful testimony; (b) deliberately or recklessly misrepresent the true facts about Plaintiffs Kinney and Hall; (c) blackball Plaintiffs Kinney and Hall in the law enforcement community; and (d) facilitate a boycott of Plaintiffs Kinney and Hall's classes.

## Additional Facts Concerning Sheriff Ellett

73.  Defendants Sheriff Ellett and Panola County have not allowed their officers to be trained by Plaintiffs Kinney and Hall

74.  Defendant Sheriff Ellett's reason for doing everything set out above was to (a) retaliate against Plaintiffs Kinney and Hall for their truthful testimony; (b) deliberately or recklessly misrepresent the true facts about Plaintiffs Kinney and Hall; (c) blackball Plaintiffs Kinney and Hall in the law enforcement community; and (d) facilitate a boycott of Plaintiffs Kinney and Hall's classes.

75.  All of the defendants were and are acting under color of state law at all times relevant hereto. All of the individual defendants were and are acting in their capacity as the policy maker and chief law enforcement officer of their city/county when they have retaliated against, blackballed, and boycotted Plaintiffs Kinney

and Hall for their truthful testimony and for speaking out on matters of public concern.

<u>Effect of Boycott, Blackballing and Retaliation</u>

76. Unfortunately, defendants' outrageous misconduct summarized above has been very successful. Plaintiffs Kinney and Hall have been ostracized by large numbers of the law enforcement community. By November 10, 1998 Plaintiffs Kinney and Hall had been completely removed from all of the East Texas Police Academy's basic police classes and reserve classes in Kilgore and Texarkana. The loss of reserve classes was especially costly because Plaintiffs Kinney and Hall received extra compensation for teaching these classes.

77. The basic police academy classes held in Carthage, Texas were cancelled because nobody signed up.

78. All of Plaintiff Kinney's classes for the 1999 calendar year have been double booked with another instructor so that the boycotters can avoid his classes. In addition, some in-service classes have been cancelled altogether and it appears that additional classes will be cancelled. As a result, up until March 15th Plaintiff Kinney cancelled three in-service classes that were going to have 35 to 40 students each and his classes in the upcoming months are lacking.

79. On or about November 10, 1998 Plaintiff Hall received the "revised" schedule from the college President. It was obvious to Plaintiff Hall that the President had given in to the pressure to get rid of Plaintiff Hall because Plaintiff Hall had been taken almost completely off the schedule.

80.  Plaintiff Hall correctly realized that his law enforcement career in East Texas was over.  Therefore, as a last resort he obtained a job with the Carrollton Police Department on December 8, 1998 and submitted his resignation on that date effective January 3, 1999.

81.  Plaintiff Hall is presently staying in a small 1977 trailer in an RV park off U.S. 75 in Plano.  It costs him $270.00 per month in rent and he commutes from his home two times each week to spend time with is wife and small children.

82.  Plaintiff Kinney has had minimal class time during the first few months of the 1999 calendar year.  He has had no time in the basic police academy and very little time in the in-service classes.

83.  All of the defendants have caused Plaintiffs Kinney and Hall to be treated like lepers at the institution where they faithfully and professionally devoted a big part of their lives and among large segments of the law enforcement community in East Texas. Simply put, the law enforcement teaching careers of Plaintiffs Kinney and Hall have been ruined because of their truthful expert testimony and their courageous refusal to honor the code of silence.

Damages

84.  Defendants' wrongful acts and omissions set out above, jointly and severally, have proximately caused Plaintiffs Kinney and Hall substantial  damages  including severe emotional distress, mental

pain and suffering, humiliation, embarrassment, lost income, sadness, and damage to reputation.

85. Defendants Sheriff Weaver, Chief Young, Director of Public Safety Moore, Chief Williams, Sheriff Smith, Sheriff Green, Sheriff Ellett and Chief Gibson's acts and omissions complained of herein were wanton, malicious, and done with the specific intent to deprive Plaintiffs Kinney and Hall of their rights and the specific intent to cause substantial injury to Plaintiffs Kinney and Hall, rendering appropriate the award of punitive damages against these individual defendants in their individual capacities.

<u>Miscellaneous</u>

86. All defendants acted under color of state law at all times relevant hereto.

V

<u>Jury Demand</u>

87. Plaintiffs Kinney and Hall demand a trial by jury on all issues so triable.

VI

<u>Causes of Action</u>

<u>First Cause of Action</u>

88. The facts set out above amount to violations of 42 U.S.C. §1985(2) for which all defendants are jointly and severally liable and for which each defendant is separately liable.

89. The acts of the individual defendants complained of herein were wanton, malicious, and done with the specific intent to deprive Plaintiffs Kinney and Hall's of their rights and the

23

specific intent to cause substantial injury to Plaintiffs Kinney and Hall, rendering appropriate the award of punitive damages against each individual defendant, separately, in his individual capacity.

## Second Cause of Action

90. The facts as set out above amount to a retaliation of Plaintiffs Kinney and Hall for exercising their right to freely speak out on matters of public concern in violation of the First Amendment to the United States Constitution made applicable to the defendants by the Fourteenth Amendment to the United States Constitution for which redress is provided by 42 U.S.C. §1983 and for which all defendants are jointly and severally liable and each defendant is separately liable.

91. The acts of the individual defendants complained of herein were wanton, malicious, and done with the specific intent to deprive Plaintiffs Kinney and Hall of their rights and the specific intent to cause substantial injury to Plaintiffs Kinney and Hall, rendering appropriate the award of punitive damages against each individual defendant, separately, in his individual capacity.

## Third Cause of Action

92. The facts as set out above amount to the deprivation of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution for which redress is provided by 42 U.S.C. §1983 and for which all defendants are jointly and severally liable and each defendant is separately liable.

93.  The acts of the individual defendants complained of herein were wanton, malicious, and done with the specific intent to deprive Plaintiffs Kinney and Hall of their rights and the specific intent to cause substantial injury to Plaintiffs Kinney and Hall, rendering appropriate the award of punitive damages against each individual defendant, separately, in his individual capacity.

<u>State Cause of Action</u>

94.  The facts set out above give rise to a state law claim based on tortious interference with a business relationship for which all defendants are jointly and severally liable and each defendant is separately liable.

95.  The acts of the individual defendants complained of herein were wanton, malicious, and done with the specific intent to deprive Plaintiffs Kinney and Hall of their rights and the specific intent to cause substantial injury to Plaintiffs Kinney and Hall, rendering appropriate the award of punitive damages against each individual defendant, separately, in his individual capacity.

WHEREFORE PLAINTIFFS PRAY that this Honorable Court:

a.  Enter judgment in behalf of Plaintiff Dean Kinney for compensatory damages against all defendants jointly and severally, and separately, in the amount of Seven Hundred Thousand Dollars ($700,000.00);

b.  Enter judgment in behalf of Plaintiff David Hall for compensatory damages against all defendants jointly and severally, and separately, in the amount of Seven Hundred Thousand Dollars ($700,000.00);

c.  Enter declaratory judgment, as authorized by 28 U.S.C. §2201, against all defendants that their acts and omissions as set out above violate the United States Constitution and 42 U.S.C. §1985(2);

d.  Enter judgment for punitive damages against Defendant Sheriff Bobby Weaver, in his individual capacity, sufficient to punish Defendant Sheriff Weaver for his misconduct in the case at bar and in an amount sufficient to deter Defendant Sheriff Weaver, and others from doing the same thing to Plaintiffs Kinney and Hall or someone else in the future;

e.  Enter judgment for punitive damages against Defendant Police Chief W. A. "Bill" Young, in his individual capacity, sufficient to punish Defendant Police Chief Young for his misconduct in the case at bar and in an amount sufficient to deter Defendant Police Chief Young, and others from doing the same thing to Plaintiffs Kinney and Hall or someone else in the future;

f.  Enter judgment for punitive damages against Defendant Director of Public Safety Ronnie Moore, in his individual capacity, sufficient to punish Defendant Director of Public Safety Moore for his misconduct in the case at bar and in an amount sufficient to deter Defendant Director of Public Safety Ronnie Moore and others from doing the same thing to Plaintiffs Kinney and Hall or someone else in the future;

g.  Enter judgment for punitive damages against Defendant Chief Charles "Chuck" Williams, in his individual capacity, sufficient to punish Defendant Chief Williams for his misconduct in the case at bar and in an amount sufficient to deter Defendant Chief Williams, and others from doing the same thing to Plaintiffs Kinney and Hall or someone else in the future;

h.  Enter judgment for punitive damages against Defendant Sheriff J. B. Smith, in his individual capacity, sufficient to punish Defendant Sheriff Smith for his misconduct in the case at bar and in an amount sufficient to deter Defendant Sheriff Smith, and others from doing the same thing to Plaintiffs Kinney and Hall or someone else in the future;

i.  Enter judgment for punitive damages against Defendant Sheriff Bob Green, in his individual capacity, sufficient to punish Defendant Sheriff Green for his misconduct in the case at bar and in an amount sufficient to deter Defendant Sheriff Green, and others from doing the same thing to

26

Plaintiffs Kinney and Hall or someone else in the future;

j.  Enter judgment for punitive damages against Defendant Police Chief Ted Gibson, in his individual capacity, sufficient to punish Defendant Police Chief Gibson for his misconduct in the case at bar and in an amount sufficient to deter Defendant Police Chief Gibson, and others from doing the same thing to Plaintiffs Kinney and Hall or someone else in the future;

k.  Enter judgment for punitive damages against Defendant Sheriff Paul Jack Ellett, in his individual capacity, sufficient to punish Defendant Sheriff Ellett for his misconduct in the case at bar and in an amount sufficient to deter Defendant Sheriff Ellett, and others from doing the same thing to Plaintiffs Kinney and Hall or someone else in the future;

l.  Grant Plaintiff Kinney and Hall any and all additional relief to which they may appear to be entitled including statutory attorneys' fees, pre-judgment interest, post-judgment interest, and their costs herein expended; and

m.  Grant a trial by jury on all issues so triable.

27

Respectfully submitted,


Curtis B. Stuckey
Attorney-in-Charge
for Plaintiffs Kinney and Hall
Bar Card No. 19437300

Stuckey & Garrigan Law Offices
2803 North Street; P.O. Box 631902
Nacogdoches, Texas 75963-1902
(409) 560-6020/FAX: (409) 560-9578


Les Mendelsohn
Attorney for Plaintiffs Kinney
and Hall
Bar Card No. 13913000

Les Mendelsohn & Associates, P.C.
Attorneys at Law
1100 Weston Centre
112 East Pecan Street
San Antonio, Texas  78205-1533
(210) 222-2271/FAX: (210) 230-8914

28